PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* DOMINGO CANALES, Defendant and Appellant.

No. 2366. Argued January 13, 1925.—Decided June 24, 1925.

MURDER IN FIRST DEGREE—JURISDICTION.—When a crime is committed on the insular highway which is the dividing line between the two judicial districts of San Juan the jurisdiction of the court should be establshed by evidence

showing the place where the crime was committed with reference to the said dividing line. The jurisdiction of the court is not established by a simple showing that the crime was committed at a certain street-car stop on the highway, inasmuch as reference to a street-car stop suggests the immediate neighborhood on both sides of the highway.

Second District Court of San Juan, M. Rodríguez Serra, J. Judgment of conviction of murder in the first degree. *Reversed.*

R. *Rivera Zayas* and *C. del Toro Fernández* for the appellant: *José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Defendant was convicted of murder in the first degree and says that there was no proof of venue.

Section 8 of the Code of Criminal Procedure provides that—

"The jurisdiction of an offense shall be in the district court of the district where the offense has been committed."

Throughout the *barrio* of Santurce in the municipality of San Juan the dividing line between the two judicial districts involved herein is a section of the insular highway leading from San Juan to Ponce known as the Ponce de León Avenue. In the instant case, in order to establish jurisdiction in the court wherein the case was tried, it was necessary for the prosecution to prove that the crime had been committed on the south side of the avenue. All of the testimony upon this point, as gleaned from the record and set forth by the *fiscal* of this court in his brief, is as follows:

"Pedro González, at the beginning of his testimony, answered the following questions put to him on direct examination:

" 'What were you doing during the month of August?—I was caretaker of a garage.—What garage?—The garage at No. 17.— Where is that garage at No. 17 situated?—In the upper part of the mosaic tile factory.'

"Isaac Ramos testified:

" 'Where did you live during the early days of August last year?—Right on the highway, No. 121.—Were you working anywhere at that time?—Right there in the tile factory.—Where is

that?—At No. 17.—Where is it situated?—In the ground floor of the garage in Santurce.'

"Ramón Ayala testified:

" 'What work were you engaged in during the early days of August?—I was working as an apprentice in Jiménez's factory.—What kind of factory?—A mosaic tile factory.—Where is that factory?—It is located at Stop 17.'

"Guillermo Velázquez testified:

" 'Where were you working at that time?—In the tile factory. —Where is that factory?—At Stop 17, on the ground floor of the Santurce garage.'

"The defendant Domingo Canales, whose testimony appears in the record, testified as follows:

" 'Where were you working on August the sixth of last year? —In the factory of Emilio Jiménez del Valle, at stop 17, on the ground floor of the automobile garage.' "

From this we gather that the garage is above a tile factory, that the tile factory is beneath the garage, and that both are located in the neighborhood of Stop 17. And, in these circumstances, we are asked to take judicial notice of the fact that at Stop 17 the street railway is laid upon the south side of Ponce de León Avenue, that the stops are marked upon the trolley company's poles, and, therefore, that the garage and factory are upon the same side of the street. But the conclusion last mentioned is a plain *non sequitur*.

The stops, when referred to in conversation, in order to identify the location of a particular building, whether it be a residence or a place of business, are not ordinarily visualized as indicating only the side of the street upon which the signboards are placed, but suggest rather the immediate vicinity upon both sides of the thoroughfare. The Barbosa School at Stop 4 in Puerta de Tierra is quite as properly and as accurately identified when so referred to as either of the corner buildings on the opposite side of the avenue, and with reference one to the other on opposite sides of the cross-street, might be.

If the evidence showed that the crime had been committed in the Puerta de Tierra Post Office, or in the Labra School, or even in the Union Club, or in the Miramar Apartment House, then we might assume perhaps that the jury were sufficiently informed as to the location of any one of these more or less public buildings, and decline to hold that the venue had not been established. But we have no more right to assume that the tile factory and garage at Stop 17 are upon the south, and not upon the north, side of the avenue, and that the jury knew this to be the fact, than we would have to assume that a crime committed in any café, billiard-room, dance-hall, or other place of amusement or of business, or private dwelling, mentioned by the witnesses without reference to its location beyond some indication as to the general vicinity of a dividing line between two judicial districts, was committed within the district where the case was tried.

It is rather remarkable that the prosecuting attorney should have asked so many questions as were propounded herein as to the general location of the garage and tile factory, without requesting any witness to fix the scene of the crime with reference to the road. And, but for the fact that truth is so often "stranger than fiction," it would seem incredible that this should have occurred more than a year after the specific warning contained in *People* v. *Amorós*, 31 P.R.R. 481, where, anticipating and seeking to avoid the possibility of being called upon to reverse a judgment of conviction in some case of larger importance than the one then under consideration, we said:

"The line must be drawn somewhere in matters of this kind and prosecuting attorneys should not rely entirely upon this court to sustain every judgment in a criminal case, regardless of the manner in which the same is conducted, merely because the defendant is shown to have committed an offense."

The other errors complained of involve instructions

given to the jury and in so far as entitled to serious consideration, if at all, may be avoided upon a new trial.

The judgment appealed from must be reversed.